## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **CONTROL POINT ASSOCIATES, INC.;** | : | **Case No.** |
| **GERRY L. HOLDRIGHT, and** | | |
| **CHARLES E. LENT,** | : | |
| | : | |
| | : | **COMPLAINT** |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **CHRISTOPHER M. SANTOSUOSSO,** | | |
| **individually and d/b/a MAMMOTH** | : | |
| **ASSOCIATES, INC., and** | | |
| **SITES & STRUCTURES GROUP, INC.** | : | |
| **a/k/a SITES & STRUCTURES GROUP,** | | |
| **LLC,** | : | |

**Defendants.**

Plaintiffs, Control Point Associates, Inc. ("Control Point," or "the Company"), Gerry L. Holdright, and Charles E. Lent, by and through their undersigned counsel, for their Complaint against Christopher M. Santosuosso ("Santosuosso"), individually and d/b/a Mammoth Associates Inc., and Sites & Structures Group, Inc. a/k/a Sites & Structures Group, LLC, allege as follows:

### NATURE OF THE ACTION

1.      This is an action by Control Point, a professional land surveying, geospatial, and consulting services company, against its former employee Santosuosso and his company, Sites & Structures Group, Inc., for (i) violation of the Massachusetts Unfair Business Practices Act, Mass. Gen. Laws ch. 93A § 11; (ii) unauthorized use of name pursuant to Mass. Gen. Laws. ch. 214 § 3A and Rhode Island Gen. Laws § 9-1-28; (iii) breach of fiduciary duty; and (iv) conversion.

2.      Santosuosso worked for Control Point as a land survey technician for approximately four months in late 2020.  During that brief time, unbeknownst to Control Point, Santosuosso usurped at least one business opportunity by inducing Control Point to perform land surveying services without charge, in reliance upon Santosuosso's false representation that the client was a close family member of Santosuosso's.  Santosuosso then collected a fee from the client which he retained for himself.

3.      Following his departure from Control Point, Santosuosso – who is not a licensed land surveyor – embarked on a spree of fraud, forgery, identity theft, and unfair and deceptive trade practices and unfair competition, in which he prepared land surveys for numerous clients in Massachusetts and Rhode Island, using the licensing credentials of multiple other land surveyors without authorization, including the credentials of at least two Control Point employees, Plaintiffs Gerry Holdright and Charles Lent.

4.      In early August 2021, Lent emailed Santosuosso, accusing him of forging his signature and survey stamp.  Santosuosso admitted wrongdoing, stating, "It was a very poor decision and choice on my part."

5.      Later, however, in his August 31, 2021 written response to a cease-and-desist letter from Control Point's legal counsel, Santosuosso denied any wrongdoing, calling the allegations "egregious" and "inaccurate."  Santosuosso has ignored subsequent correspondence from Control Point regarding this matter.

6.      As a result of Santosuosso's misconduct and fraud on the public, Control Point has suffered and is continuing to suffer monetary damages as well as immediate and irreparable harm to its goodwill and reputation.  Lent and Holdright are also suffering irreparable harm to their professional reputations due to Santosuosso's misconduct.  Therefore, in addition to money

damages, Plaintiffs seek injunctive relief against Santosuosso and his company, together with any other individual or entity acting in concert with them.

## THE PARTIES

7.      Plaintiff Control Point Associates, Inc. is a New Jersey corporation with headquarters located at 30 Independence Boulevard, Suite 100, Warren, New Jersey.

8.      Plaintiff Gerry L. Holdright is an individual residing at 68 Oak Hill Drive, Sharon, Massachusetts.  Holdright is licensed as a land surveyor by the Commonwealth of Massachusetts and has been employed by Control Point since November 24, 2014.

9.      Plaintiff Charles E. Lent is an individual residing at 1011 Gerling Street, Schenectady, New York.  Lent is licensed as a land surveyor by the State of Rhode Island, as well as the States of New York, Connecticut, Vermont, Maine, and the Commonwealth of Pennsylvania, and has been employed by Control Point since September 8, 2020.

10.      Defendant Christopher M. Santosuosso is an individual who, upon information and belief, resides at 30 Fernbrook Court, Apartment 4, Cranston, Rhode Island 02920.

11.      Upon information and belief, Defendant Sites & Structures Group, Inc. is a Rhode Island corporation owned and operated by Santosuosso, with an address of 1637 Elmwood Avenue, Suite 200, Cranston, Rhode Island 02910.

12.      Upon information and belief Defendant Mammoth Associates, Inc. is not a registered corporation or a registered assumed name, but rather an unincorporated entity or fictitious name under which Santosuosso conducted business.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this case based on diversity of

citizenship pursuant to 28 U.S.C. § 1332, because the Plaintiffs and Defendants are citizens of

different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.    This Court has personal jurisdiction over Defendants, and venue is proper in this

District, because the claims at issue here arise from Defendants' transacting business, contracting

to supply services, and causing tortious injury within the District of Massachusetts.  28 U.S.C.A.

§ 1391(b)(2); Mass. Gen. Laws ch. 223A, § 3(a)-(c).

## FACTS COMMON TO ALL CLAIMS

### Control Point and its Land Surveying Business

15.    Control Point is a professional land surveying, geospatial, and consulting services

company with offices throughout the Northeast and Mid-Atlantic regions and elsewhere, including

an office located at 352 Turnpike Road, Southborough, Massachusetts.

16.    One of the services Control Point provides to public and private sector clients is

traditional land surveying services. In doing so, Control Point uses the latest technology for field

data collection, including GPS equipment, electronic data collectors, digital and auto levels, and

total stations.

17.    Control Point takes pride in bringing substantial experience, responsiveness, and

commitment to quality to ensure the highest accuracy on every survey.

18.    Control Point has been in business for more nearly 30 years, and has expended

substantial time, effort, and resources in developing customer goodwill and an excellent reputation

in the land development and construction industry.

19.     Control Point currently employs fourteen professional land surveyors who are licensed in seventeen states where Control Point conducts business.  These licensed surveyors oversee teams of field crews and office staff, applying their broad knowledge and experience to all projects.

20.     Only professional land surveyors who are properly licensed and in good standing are authorized to sign and certify surveys and plans, in accordance with state law, to ensure that such surveys and plans are prepared in conformity with the rules and regulations of the applicable state recorder or register of deeds.

21.     Two of the professional land surveyors employed by Control Point are Plaintiffs Holdright and Lent.

22.     Holdright is licensed as a land surveyor in Massachusetts and has been employed by Control Point since November 24, 2014.

23.     Lent is licensed as a land surveyor by the State of Rhode Island, among other States, and has been employed by Control Point since September 8, 2020.

**Santosuosso's Theft of Services by Deception While Employed by Control Point**

24.     Santosuosso worked for Control Point as a land survey technician from June 29, 2020 through November 9, 2020.

25.     As an employee of Control Point, Santosuosso was aware of and acknowledged Control Point's policies, including its policy concerning conflicts of interest, as set forth in the Company's employee handbook:

> CONFLICTS OF INTEREST
>
> The Firm respects its employees' right to engage in activities outside of the workplace.  However, to avoid any actual or apparent conflict of interest:

- You should not become involved, at any level, in a personal business transaction that could be viewed as a conflict between your personal interests and either those interests of the Firm or your role as employee;

- You should not accept any outside employment that could potentially interfere with your attendance at work or performance of your duties with the Firm.

26.     Santosuosso is not a licensed professional land surveyor.  He is not licensed in any state, and therefore he is not authorized to sign or certify any land survey or plan.

27.     During his employment with Control Point, Santosuosso approached the Company with a request to help his uncle with a land development project "off the clock."  Santosuosso proposed to do the field work himself, and asked that Holdright supervise and sign the plan.

28.     Control Point and Holdright agreed to Santosuosso's request, relying on his representation that the work was being performed for a close family member of Santosuosso's.

29.     Holdright, as an employee of Control Point, performed the requested work, reviewing and stamping a plot plan for a property owned by Peter Hogan and Rose Anne Neglee, located at 128 Lansdowne Street, Quincy Massachusetts ("Hogan/Neglee Property").

30.     Unbeknownst to Control Point and Holdright, no family member of Santosuosso's is connected with the Hogan/Neglee Property.  Rather, Santosuosso had individually, on his own behalf, contracted to perform the services for Leonard Davenport of Leda Management, Inc., a professional developer of the Hogan/Neglee Property.

31.     Leda Management, Inc. paid Santosuosso for the work on the Hogan/Neglee Property, and Santosuosso kept the funds for himself, without disclosing this to Control Point or Holdright.

32.     Control Point did not learn of Santosuosso's deception concerning the Hogan/Neglee Property until early August 2021, as further described below.

33.     Santosuosso voluntarily resigned from Control Point effective November 9, 2020.

**Santosuosso's Unauthorized Use of Names and Licenses:  Davenport Work**

34.     Following his departure from Control Point, again unbeknownst to Control Point and its employees, Santosuosso prepared land surveys for numerous clients in Massachusetts and Rhode Island, using the licensing credentials of multiple other land surveyors without authorization, including the credentials of at least two Control Point employees, Plaintiffs Holdright and Lent.

35.     On August 2, 2021, Leonard Davenport ("Davenport") of Leda Management, Inc. – the developer on the Hogan/Neglee Property – contacted Lent about another property, located at 1099 Bullocks Point Avenue, East Providence, Rhode Island, and owned by Patricia Mallozzi ("Mallozzi Property").

36.     Davenport explained that he was working with Santosuosso on the Mallozzi Property, but Santosuosso was not returning his phone calls, so Davenport decided to reach out to Lent, whose name was on the administrative sub-division plans Santosuosso had delivered to Davenport.

37.     Lent had never heard of the Mallozzi Property, and explained this to Davenport.

38.     Davenport emailed Lent copies of the administrative sub-division plans Santosuosso had prepared for Davenport, and Lent was shocked to discover that the plans contained his electronic signature and official professional land surveyor stamp.

39.     One of the administrative sub-division plans for the Mallozzi Property, dated January 26, 2021, identified Mammoth Associates, Inc. as the company that prepared the plan.  A true and correct image of the certification block of this plan is copied below:



40.     Upon information and belief Mammoth Associates, Inc. is not a registered corporation or a registered assumed name, but rather an unincorporated entity or fictitious name under which Santosuosso conducted business.

41.     A second administrative sub-division plan for the Mallozzi Property, also dated January 26, 2021, identified Sites + Structures Group, LLC as the company that prepared the plan. A true and correct image of the certification block of this plan is copied below:



42.     Both administrative sub-division plans for the Mallozzi Property identify Santosuosso, by use of the initials "C.M.S.," as the field crew involved in preparing the plans.

43.     Both administrative sub-division plans for the Mallozzi Property contain Lent's electronic signature and official professional land surveyor stamp, but Lent did not affix them to the plans and did not authorize anyone else to do so.  In fact, Lent never saw these plans and had no idea they existed before he received them from Davenport on August 2, 2021.

44.     The signature block and stamp Santosuosso used for the Mallozzi Property plans show that Santosuosso copied and/or took them from Control Point while he was working for Control Point, because they are substantially the same as the actual originals maintained in Control Point's electronic systems.

45.     Santosuosso did not have authorization to copy, retain or remove any electronic files, property, or information belonging to Control Point or its employees, or to use any such property or information except in furtherance of Control Point's business during his employment.

46.     Through Davenport, Control Point also learned that Santosuosso used Holdright's electronic signature and stamp on an Existing Conditions Plan for the Hogan/Neglee Property, dated September 9, 2020.  A true and correct image of the certification block of this plan is copied below:



47.     The September 9, 2020 Existing Conditions Plan for the Hogan/Neglee Property is not the plot plan Holdright knowingly stamped based on Santosuosso's misrepresentation that the work was being performed for his uncle.  Rather it is a much more detailed plan which Holdright did not review, and was unaware of until Davenport informed him of it on August 3, 2021.

48.     Holdright did not authorize Santosuosso to use his signature or licensing credentials in connection with the September 9, 2020 Existing Conditions Plan for the Hogan/Neglee Property.

**Santosuosso's Unauthorized Use of Names and Licenses:  MF Engineering Work**

49.     On September 24, 2021, Holdright was contacted by J. Randolph Parker, Jr., of Land Management Systems, Inc., located in Plymouth, Massachusetts, who forwarded Holdright multiple surveys that were purportedly prepared by him.

50.     Parker is a licensed professional land surveyor in the Commonwealth of Massachusetts, who was also victimized by Santosuosso in the same manner as Holdright and Lent.

51.     Parker advised Holdright that MF Engineering & Design Inc., located in Westborough, Massachusetts, had sent Parker surveys that included Holdright's electronic signature and surveyor's stamp.

52.     According to Parker, MF Engineering hired Santosuosso to prepare the surveys, and the surveys Santosuosso delivered contained Holdright's electronic signature and surveyor's stamp.  True and correct images of the certification blocks on the plans are copied below.

    a.      Certified Plot Plan for parcel owned by Ramnath Chaudhary, 53 Campbell Street, Woburn, Massachusetts, dated April 9, 2021:



b.      Plan of Land for property of Edheider Goncalves de Souza, 14 Satuckett

Lane, Billerica, Massachusetts, dated April 12, 2021:



c.      Plan of Land for property of Marcelo Cesar Dasilva, 6 Cody Road,

Framingham, Massachusetts, dated May 4, 2021:



d.      Plan of Land for property of Helvicio Caravalho, 21 Blaiswood Drive,

Marlborough, Massachusetts, dated May 10, 2020:

e.      Condominium Site Plan for property of Traolach Cahillane, 133-135 Morse

Street, Watertown, Massachusetts, dated June 1, 2021:



53.     Holdright did not affix his signature or professional land surveyor stamp to any of

the plans identified in paragraphs 52(a) through 52(e), above, and he did not authorize anyone else

to do so.

54.     Holdright never saw these plans and had no idea they existed before he received

them from Parker on September 24, 2021.

55.     The signature block and stamp Santosuosso used for the plans identified in

paragraphs 52(a) through 52(e), above, show that Santosuosso copied and/or took them from

Control Point while he was working for Control Point, because they are substantially the same as

the actual originals maintained in Control Point's electronic systems.

**Santosuosso's Initial Admission of Wrongdoing and Subsequent Denials**

56.     When Davenport informed Lent on August 2, 2021 that Santosuosso had used

Lent's name, signature, and stamp without authorization, Lent emailed Santosuosso that same day

with the following message:

> Your "clients" contacted me.  You have probably gotten yourself in
> a heap of trouble.
>
> 1. Forging a RI Survey stamp
> 2. Forging a signature
> 3. Using corporate names that are not incorporated

I'm still deciding what action to take.  This won't be the last time
you hear from me.

57.     Santosuosso replied less than ten minutes later with the following message: "It was a very poor decision and choice on my part."

58.     The next day, August 3, 2021, Lent filed a complaint with the Rhode Island Board of Registration for Professional Land Surveyors, to notify the Board of Santosuosso's fraudulent conduct.

59.     Despite Santosuosso's initial admission of wrongdoing, he has since denied wrongdoing, telling conflicting stories to various parties.

60.     Control Point, through its counsel, sent Santosuosso letter dated August 25, 2021, concerning his unauthorized use of Lent's signature and stamp on the Mallozzi Property plans, and demanding that Santosuosso:

        a.      cease and desist his unauthorized use of Lent's signature, stamp, and licensing credentials;

        b.      notify Davenport and revoke in writing the issuance of any and all fraudulent surveys;

        c.      deliver to Control Point any and all other surveys or other documents containing signatures or stamps of Control Point personnel, and all proprietary information belonging to Control Point, including electronic signature blocks; and

        d.      provide written assurances that he has complied with these demands and will permanently refrain from engaging in further misconduct.

61.     Santosuosso replied by letter dated August 31, 2021, denying any wrongdoing and stating as follows:

> August 31, 2021
>
> Ms. Akhtar,
> I am writing in response to you letter dated August 25, 2021. I certainly appreciate you're bringing this to my attention, I can assure you that Sites & Structures Group, Inc. does not engage in the practice of land survey services for hire at this present time. As for the other alleged egregious allegations, inaccurate statements and demands, those are currently being reviewed and an appropriate response will be formally issued.
>
> Sincerely yours,
>
> Christopher Santosuosso

62.     Control Point's counsel responded with a second letter to Santosuosso, dated September 1, 2021, referencing Santosuosso's August 2, 2021 email in which he admitted to the misconduct, and demanding a formal response by September 9, 2021.

63.     Santosuosso did not respond to the September 1, 2021 letter from Control Point's counsel.

64.     After Holdright learned from Randolph Parker on September 24, 2021 that Santosuosso had also defrauded MF Engineering using purloined signatures and stamps, Control Point contacted MF Engineering to discuss the situation.

65.     Carlos Ferreira of MF Engineering informed Control Point that on September 28, 2021, he confronted Santosuosso about the surveys he prepared for MF Engineering, identified in paragraphs 52(a) through 52(e), above.   According to Ferreira, Santosuosso denied any wrongdoing and claimed he had authorization to use the signatures and stamps.

66.     Santosuosso's initial admission and subsequent denials, contrasting stories, and failure to comply with Control Point's written demands show that, absent judicial intervention, Santosuosso is not prepared to take responsibility for his actions and cease further misconduct.

67.     Santosuosso's conduct, described herein, was intentional, willful, knowing and egregious.

68.     Santosuosso has been unjustly enriched by his misconduct, in that he fraudulently misrepresented his ability to perform land surveying services and took fees for surveys he delivered to customers using the stolen licensing credentials and forged signatures of Control Point's employees Holdright and Lent.

69.     As a result of Santosuosso's misconduct and fraud on the public, Control Point has suffered and is continuing to suffer monetary damages as well as immediate and irreparable harm to its goodwill and reputation.

70.     Lent and Holdright are also suffering immediate and irreparable harm to their professional reputations due to Santosuosso's misconduct.

### FIRST CAUSE OF ACTION
**Control Point Associates, Inc. v. All Defendants**
**Massachusetts Unfair Business Practices Act, Mass. Gen. Laws ch. 93A, §§ 2, 11**

71.     The allegations in the preceding paragraphs of this Complaint are incorporated as if fully set forth herein.

72.     Defendants made false and misleading representations of fact in connection with providing business services, namely that they had licensed land surveyors on staff and were qualified to perform land surveys.

73.     In performing professional services for customers, Defendants forged the signatures and fraudulently used the licensing credentials and professional land surveyor stamps of Control Point employees without authorization.

74.     Defendants' conduct constitutes unfair and deceptive business practices and unfair competition under the Massachusetts Unfair Business Practices Act, M.G.L.A. ch. 93A § 2.

75.     Defendants have been unjustly enriched as a result of their deceptive business practices and unfair competition.

76.     Control Point has been injured as a result of the misrepresentations, both by direct diversion of sales and by a lessening of goodwill associated with its products and services.

77.     Upon information and belief, Defendants' conduct is ongoing, and will continue unless and until they are enjoined from making false and misleading statements concerning their services.

78.     As a direct and proximate result of Defendants' misconduct, Control Point is suffering and will continue to suffer irreparable injury, including loss of the competitive advantages, loss of business, loss of business expectancies and clients, and damage to goodwill, for which a remedy at law is inadequate.  Accordingly, Control Point is entitled to injunctive and equitable relief.

79.     In addition, as a consequence of Defendants' willful, knowing, and intentional violations of M.G.L.A. ch. 93A § 2, Plaintiffs seeks actual, compensatory, consequential, incidental, and exemplary damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Holdright and Lent v. All Defendants
### Unauthorized Use of Name, Mass. Gen. Laws ch. 214 § 3A and R.I. Gen. Laws § 9-1-28

80.     The allegations in the preceding paragraphs of this Complaint are incorporated as if fully set forth herein.

81.     For purposes of trade in connection with offering and selling land surveying services, Defendants used the name and licensing credentials of Holdright without his authorization, in violation of Mass. Gen. Laws ch. 214 § 3A.

82.     For purposes of trade in connection with offering and selling land surveying services, Defendants used the name and licensing credentials of Lent without his authorization, in violation of R.I. Gen. Laws § 9-1-28.

83.     Defendants have been unjustly enriched as a result of their unauthorized use of Holdright's and Lent's names.

84.     Plaintiffs Holdright and Lent have suffered and are continuing to suffer harm as a result of the unauthorized use of their names, in the form of reputational injury in their profession. In addition, Defendants' false and unauthorized use of their names and licensing credentials could expose Holdright and Lent to potential scrutiny by the Massachusetts and Rhode Island licensing boards.

85.     Upon information and belief, Defendants' conduct is ongoing, and will continue unless and until they are enjoined from fraudulently using Holdright's and Lent's names and licensing credentials in connection with offering and performing land surveying services.

86.     As a direct and proximate result of Defendants' misconduct, Plaintiffs Holdright and Lent are suffering and will continue to suffer irreparable injury, including loss of the competitive advantages, loss of business, loss of business expectancies and clients, and damage to

goodwill, for which a remedy at law is inadequate.  Accordingly, Plaintiffs are entitled to injunctive and equitable relief.

87.     In addition, as a consequence of Defendants' violations of Mass. Gen. Laws. ch. 214 § 3A and R.I. Gen. Laws § 9-1-28, Plaintiffs Holdright and Lent seek actual, compensatory, consequential, incidental, and exemplary damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**Control Point Associates, Inc. v. Santosuosso**
**Breach of Fiduciary Duty**

88.     The allegations in the preceding paragraphs of this Complaint are incorporated as if fully set forth herein.

89.     As an employee of Control Point, Defendant Santosuosso was placed in a position of trust and confidence, and was expected to devote his full time to the management and promotion of Control Point's business interests.

90.     As a result of Santosuosso's employment relationship with Control Point, Santosuosso owed certain fiduciary duties and duties of loyalty and honesty to Control Point, both during and after his employment, including, but not limited to, duties: (a) not to compete with Control Point during his employment, (b) not to usurp corporate opportunities or divert business on behalf of another, (c) not to solicit Control Point's clients or prospective clients on behalf of another, (d) not to misuse or misappropriate Control Point's proprietary information, and (e) not to be deceitful to Control Point.

91.     While employed by Control Point Santosuosso breached his fiduciary duties of loyalty and honesty to Control Point by working in his own interests.

92.     Specifically, during his employment with Control Point, Santosuosso usurped at least one business opportunity by inducing Control Point to perform land surveying services without charge, in reliance upon Santosuosso's false representation that the client was a close family member of Santosuosso's.  Santosuosso then collected a fee from the client which he retained for himself.

93.     Santosuosso also breached his fiduciary duty of loyalty and honesty to Control Point by using Control Point's confidential, proprietary information, including pricing information, to solicit clients and divert business from Control Point to Santosuosso and his companies.

94.     Santosuosso further breached his fiduciary duty to Control Point by misappropriating Control Point's proprietary information and property, including Holdright's and Lent's signatures and stamps.

95.     Following his departure from Control Point, Santosuosso breached his fiduciary duty of loyalty and honesty to Control Point by falsely and fraudulently using the names and licensing credentials of at least two other Control Point employees, Holdright and Lent, to issue land surveys to multiple other unsuspecting consumers.

96.     As a direct and proximate result of Santosuosso's breaches of fiduciary duties, Control Point is suffering and will continue to suffer irreparable injury, including actual loss of business, loss of business expectancies and clients, and damage to goodwill, for which a remedy at law is inadequate. Accordingly, Control Point is entitled to injunctive and equitable relief.

97.     In addition, as a consequence of Santosuosso's breaches of fiduciary duty, Control Point seeks actual, compensatory, consequential, incidental, and punitive damages.

## FOURTH CAUSE OF ACTION
### All Plaintiffs v. All Defendants
### Conversion and Theft of Services by Deception

98.     The allegations in the preceding paragraphs of this Complaint are incorporated as if fully set forth herein.

99.     Santosuosso intentionally and wrongfully exercised control or dominion over property belonging to Plaintiffs, including but not limited to Lent's and Holdright's signatures and professional land surveyor stamps.

100.    Plaintiffs had an ownership or possessory interest in the property at the time of the conversion.

101.    Plaintiffs have been harmed by Santosuosso's conversion and wrongful use of Plaintiffs' property.

102.    Santosuosso has refused to return Plaintiffs' property, and has refused to give assurances that he will not continue using Plaintiffs' property in the future.

103.    In addition, Santosuosso deceived Control Point into performing services at no charge, based on Santosuosso's misrepresentation that the services were being performed for his uncle when, in fact, Santosuosso was collecting and retaining fees for himself.

104.    As a direct and proximate result of Santosuosso's conversion, Control Point is suffering and will continue to suffer irreparable injury, including actual loss of business, loss of business expectancies and clients, and damage to goodwill, for which a remedy at law is inadequate.  Accordingly, Control Point is entitled to injunctive and equitable relief.

105.    In addition, as a consequence of Santosuosso's conversion, Control Point seeks actual, compensatory, consequential, incidental, and punitive damages.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and an Order against Defendants granting the following relief:

1.  A permanent injunction:

    (a)  Enjoining Defendants and all parties in active concert with them from using the signatures, stamps and licensing credentials belonging to any other individual, specifically including but not limited to Holdright and Lent and any other Control Point employee;

    (b)  Ordering Defendants to identify and deliver to Control Point any and all surveys, plans, and other documents prepared by Santosuosso and containing the signature, stamp, or credentials of Holdright, Lent, and any other Control Point employee;

    (c)  Ordering Defendants to identify and deliver to Control Point all electronic and paper copies of data, documents, and information in his possession which belongs to Control Point, specifically including but not limited to all electronic signatures and stamps pertaining to Control Point employees;

    (d)  Ordering Defendants to submit to a deposition under oath for purposes of identifying any and all surveys, plans, and other documents prepared by Santosuosso and containing the signature, stamp, or credentials of Holdright, Lent, and any other Control Point employee.

2.  An award of:

    (a)  Actual, incidental, compensatory, and consequential damages in an amount to be proven at trial;

    (b)  Exemplary damages in an amount to be proven at trial due to Defendants' willful, knowing, and malicious conduct and as provided by relevant statutory authority;

    (c)  Costs and expenses incurred herein, including reasonable attorneys' fees and interest; and,

(d)      Such other relief as the Court may deem just, equitable and proper.

Respectfully submitted,

 /s/  *John R. Snyder*
John R. Snyder
BBO No. 471480
POTOMAC LAW GROUP, PLLC
101 Federal Street, Suite 1900
Boston, MA  02110
Telephone:  617.285.1790
jsnyder@potomaclaw.com

Susan V. Metcalfe (of counsel)
POTOMAC LAW GROUP, PLLC
1300 Pennsylvania Avenue, Suite 700
Washington, DC  20004
Telephone: 717.951.5653
smetcalfe@potomaclaw.com

*Attorneys for Plaintiffs*

Dated:  October 18, 2021