UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CONTROL POINT ASSOCIATES, INC., | * | |
| GERRY L. HOLDRIGHT, and | * | |
| CHARLES E. LENT, | * | |
| | * | Civil Action No. 1:21-cv-11699-IT |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| CHRISTOPHER M. SANTOSUOSSO, | * | |
| individually and d/b/a MAMMOTH | * | |
| ASSOCIATES, INC., and | * | |
| SITES & STRUCTURES GROUP, INC. | * | |
| a/k/a SITES & STRUCTURES GROUP, | * | |
| LLC, | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

April 20, 2022

TALWANI, D.J.

Pending before the court is a motion for default judgment. The court is granting most, but not all, of the relief sought for the reasons set forth herein.

## I.    Background

Plaintiffs Control Point Associates, Inc. ("Control Point"), Gerry L. Holdright, and Charles E. Lent brought this suit against Defendant Christopher M. Santosuosso, individually and d/b/a Mammoth Associates Inc., and Sites & Structures Group, Inc., a/k/a Sites & Structures Group, LLC ("Sites & Structures"). As alleged in the Complaint [Doc. No. 1], Control Point is a professional land surveying company that has been in business for nearly 30 years and has developed customer goodwill and an excellent reputation in the land development industry. Compl. ¶¶ 15-18. Plaintiffs Holdright and Lent are licensed land surveyors employed by Control Point. Id. at ¶¶ 21-23. Santosuosso, who is not a licensed professional land surveyor, was

employed by Control Point for approximately four months. Id. at ¶¶ 2, 24, 26. Following his departure, he prepared land surveys and plans for numerous clients in Massachusetts and Rhode Island, using without authorization the licensing credentials of multiple other land surveyors, including Holdright and Lent. Id. at ¶¶ 3, 24, 34-55. Sites & Structures is a Rhode Island corporation owned and operated by Santosuosso and is identified as the company that prepared at least one of these plans. Id. at ¶ 41. Based on these acts, Plaintiffs have alleged (i) violation of the Massachusetts Unfair Business Practices Act, Mass. Gen. Laws ch. 93A §§ 2,11; (ii) unauthorized use of name pursuant to Mass. Gen. Laws. ch. 214 § 3A and Rhode Island Gen. Laws § 9-1-28; (iii) breach of fiduciary duty; and (iv) conversion. Id.

The Complaint [Doc. No. 1] alleges that Control Point has been injured "as a result of the misrepresentations, both by direct diversion of sales and by a lessening of goodwill associated with its products and services," id. at ¶ 76, that Holdright and Lent have suffered and are continuing to suffer harm "in the form of reputational injury in their profession," id. at ¶ 84, that Defendants' conduct is ongoing, id. at ¶¶ 77, 85, and that, unless Defendants are enjoined, Plaintiffs will continue to suffer injury through the "loss of the competitive advantages, loss of business, loss of business expectancies and clients, and damage to goodwill, for which a remedy at law is inadequate," id. at ¶¶ 78, 86. The Complaint [Doc. No. 1] seeks permanent injunctive relief: (a) "[e]njoining Defendants and all parties in active concert with them from using the signatures, stamps and licensing credentials belonging to any other individual, specifically including but not limited to Holdright and Lent and any other Control Point employee"; (b) "[o]rdering Defendants to identify and deliver to Control Point any and all surveys, plans, and other documents prepared by Santosuosso and containing the signature, stamp, or credentials of Holdright, Lent, and any other Control Point employee"; (c) "[o]rdering Defendants to identify

and deliver to Control Point all electronic and paper copies of data, documents, and information in his possession which belongs to Control Point, specifically including but not limited to all electronic signatures and stamps pertaining to Control Point employees"; (d) "[o]rdering Defendants to submit to a deposition under oath for purposes of identifying any and all surveys, plans, and other documents prepared by Santosuosso and containing the signature, stamp, or credentials of Holdright, Lent, and any other Control Point employee." Id. at 22. The Complaint [Doc. No. 1] also seeks "actual, compensatory, consequential, incidental, and exemplary damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial." Id. at ¶ 79.

Summons was issued as to all Defendants on October 19, 2021. [Doc. No. 4]. Plaintiffs served Defendants on November 4, 2021. [Doc. Nos. 5, 6]. Neither Defendant entered an appearance nor filed a response. The clerk entered default as to both Defendants on December 15, 2021. Not. of Default [Doc. No. 8].

On March 13, 2022, Plaintiffs filed the pending Motion for Default Judgment [Doc. No. 11]. On March 30, 2022, Plaintiffs provided additional information in response to the court's request for a breakdown of attorneys' fees sought. See Order [Doc. No. 12]; Addendum to Mot. for Default J. [Doc. No. 13]. Defendants still have not appeared and have filed no opposition.

**II.     Standard of Review**

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for entry of a default judgment. The first step is a clerk's entry of a default under Rule 55(a), which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The second step provides for entry of a default

judgment by the clerk if the plaintiff's claim is for a sum certain, or otherwise by the court, on an application for a default judgment. Fed. R. Civ. P. 55(b).

When a defendant has failed to respond to the complaint, the court presumes that all well-pleaded factual allegations relating to liability are true. See Sec. & Exch. Comm'n v. Tropikgadget FZE, 146 F. Supp. 3d 270, 275 (D. Mass. 2015). So, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact. Id. However, the court does not presume that any factual allegations relating to the amount of damages suffered are true. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The court must ensure that the damages awarded are reasonable and demonstrated by the evidence. Fed. R. Civ. P. 55(b)(2)(C).

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Id. 54(c). "It follows that a default does not expose a defendant to impositions not properly identified before the entry of default." Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 40 (1st Cir. 2012).

## III.   Discussion

Plaintiffs seek $34,383.32 in damages, comprised of $33,745 in attorneys' fees, a filing fee of $402.00, and other legal expenses, such as process server's fees and postage, of $236.32. Second Aff. of Senwan H. Akhtar ¶ 4 [Doc. No. 13-2]. Plaintiffs request that the damages be trebled for Defendants' knowing and willful violations of Mass. Gen. Laws ch. 93A, § 2 and ch. 214, § 3A, and of Rhode Island Gen. Laws § 9-1-28(a). Mot. for Default J. ¶ 8 [Doc. No. 11]. Plaintiffs also request that the court compel Defendants to provide information and documents and enter a permanent injunction. Id. at ¶ 7. This Memorandum addresses these requests in turn.

A.    *Actual Damages*

Plaintiffs contend that "[t]he attorneys' fees and costs [they] have incurred were in furtherance of their efforts to mitigate the effects of Defendants' violations [of Mass. Gen. Laws ch. 93A, § 2 and ch. 214, § 3A, and of Rhode Island Gen. Laws § 9-1-28(a)] and to prevent further violations, and therefore constitute damages incurred." Id. at ¶ 8.

Section 2 of Mass. Gen. Laws ch. 93A ("Chapter 93A") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. The statute provides a cause of action and damages to "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two . . ." Id. at § 11. Both Section 3A of Mass. Gen. Laws ch. 214 and Section 9-1-28(a) Rhode Island Gen. Laws provide that a person whose "name, portrait or picture" was used for commercial purposes without authorization may recover damages for any injuries sustained.

Attorneys' fees and costs incurred in litigating an action typically are not considered part of "actual damages." However, "if a [Chapter] 93A violation forces an individual to incur legal fees and expenses that are not simply those incurred in vindicating that person's rights under the statute, those fees may be treated as actual damages . . ." Montanez v. 178 Lowell St. Operating Co., LLC, 95 Mass. App. Ct. 699, 703, 129 N.E.3d 885 (2019); see also Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 63, 712 N.E.2d 93 (1999) (legal expenses paid to defend against "unreasonable or unnecessary medical bills" were recoverable as damages under

Chapter 93A). The court finds this reasoning equally applicable in calculating damages under Section 3A of Mass. Gen. Laws ch. 214 and Section 9-1-28(a) Rhode Island Gen. Laws.

Accordingly, to the extent that Plaintiffs incurred attorneys' fees and costs separately from this action, for example in a licensing and surveying board proceeding, such fees constitute actual damages under the statutes. Per the breakdown provided by the Plaintiffs, Second Aff. of Senwan H. Akhtar, Ex. A [Doc. No. 13-2], the court calculates $5,127.50 of attorneys' fees to have been incurred separate from this action.[1]

      B.    *Treble of Damages*

Chapter 93A states that recovery "shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation . . ." Mass. Gen. Laws ch. 93A, § 11. Further, both Mass. Gen. Laws ch. 214 § 3A and R.I. Gen. Laws § 9-1-28 permit the court to award the plaintiff treble the amount of the damages sustained if the defendant committed the violation "knowingly."

In this case, Defendants willfulness to commit the violation is easily discernable from the Complaint [Doc. No. 1], as the well-pleaded factual allegations relating to liability are accepted as true. On August 2, 2021, upon learning of Santosuosso's use of his name, signature, and stamp without authorization, Lent emailed Santosuosso listing the violations and indicating that Santosuosso had gotten himself "in a heap of trouble." Compl. ¶ 56 [Doc. No. 1]. Santosuosso responded almost immediately, admitting that "[i]t was a very poor decision and choice on [his]

---

[1] The court has included as actual damages all or part of the fees incurred on the following dates: 8/23/21; 8/25/21; 9/01/21; 9/21/21; 9/27/21; 9/28/21; 9/30/21; 10/05/21; 11/9/21; 1/3/22; 1/4/22; 1/18/22; and 1/25/22.

part." Id. at ¶ 57.[2] Thus, the court finds that Sontosuosso willfully and knowingly committed the violations related to Plaintiff Lent and awards Plaintiffs treble damages of $15,382.50.[3]

C.     *Attorneys' Fees and Costs*

Section 11 of Chapter 93A provides that the plaintiff "in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred." Mass. Gen. Laws ch. 93A, § 11. Accordingly, the court considers whether the attorneys' fees and costs sought but not awarded as actual damages should still be awarded as reasonable fees and costs under Chapter 93A.

In awarding attorneys' fees under Chapter 93A, courts are directed to "consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases. RFF Fam. P'ship, LP v. Ross, 814 F.3d 520, 537 (1st Cir. 2016) (citing Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 837 N.E.2d 1121, 1138 (2005)). "No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required." Id. (quoting Berman v. Linnane, 748 N.E.2d 466, 469 (2001). "In the end, the fee award is 'largely discretionary.'" Id. (quoting Twin Fires Inv., LLC, 837 N.E.2d at 1138).

Pursuant to the court's Order [Doc. No. 12], Plaintiffs have provided their Addendum to the Motion for Default Judgment [Doc. No. 13] sufficiently describing attorneys' fees sought,

---

[2] Santosuosso later denied any wrongdoing when confronted by Control Point's counsel but did not respond when Control Point's counsel referenced his August 2, 2021 email in which he admitted to the misconduct to Lent. Compl. at ¶¶ 60-64 [Doc. No. 1].

[3] The court need not determined whether Defendants committed the violations knowingly as to Plaintiff Holdright because it does not impact the calculation for damages.

including the hourly rate charged by each attorney who performed the work, the number of hours

of work, and the work performed. The court finds that the attorneys' fees are reasonable and

grants Plaintiffs' request for an additional award of $29,255.82 in attorneys' fees and costs

related to this action, including $28,617.50 of attorneys' fees, a filing fee of $402.00, and other

legal expenses of $236.32.

      D.    *Injunctive Relief*

Under Chapter 93A, "the court shall award such other equitable relief, including an

injunction, as it deems to be necessary and proper." Mass. Gen. Laws ch. 93A, § 11. Further,

under both unauthorized use of name statutes, a person whose name, portrait, or picture is used

in violation of the statute may bring an action to "prevent and restrain the use thereof." Mass.

Gen. Laws. ch. 214 § 3A; R.I. Gen. Laws § 9-1-28.

Plaintiffs have alleged that "Defendants' conduct is ongoing and will continue unless and

until they are enjoined from fraudulently using Holdright's and Lent's names and licensing

credentials in connection with offering and performing land surveying services." Compl. ¶ 85

[Doc. No. 1]. Plaintiffs' counsel has filed an affidavit corroborating Defendants' unwillingness

to cooperate or respond to communications regarding this matter. Aff. of Senwan H. Akhtar ¶ 4

[Doc. No. 11-4]. Specifically, on August 31, 2021, Santosuosso "den[ied] any wrongdoing" in a

letter to Control Point's outside counsel and did not respond to a subsequent letter sent to him.

Id.

      1.    Statements and Materials Requested from Defendants

Plaintiffs request that the court order the Defendants within fourteen days of entry of

default judgment to "identify in a sworn statement all surveys, plans, and other documents

prepared by either Defendant upon which either Defendant placed the signature, stamp, or

credentials of Holdright, Lent, or any other Control Point employee, and for which payment was received by or is or was payable to either Defendant or any entity controlled by Santosuosso[4]" and to "deliver to Control Point, along with said sworn statement, all electronic and paper copies of any such documents in the possession, custody, or control of either Defendant." Mot. for Default J., Ex. B at 2 [Doc. No. 11-1]. Plaintiffs also request that the court order the Defendants within fourteen days of entry of default judgment to "identify in a sworn statement, and deliver to Control Point, all electronic and paper copies of data, documents, and information in their possession, custody, or control that belong to any of the Plaintiffs, specifically including but not limited to all electronic signatures and stamps pertaining to Control Point employees, and Defendants shall in that sworn statement affirm that all such items have been returned to Control Point or are no longer in the possession, custody or control of either Defendant." Id.

The court finds that Plaintiffs' requests for sworn statements and materials from Defendants within fourteen days of entry of default judgment are necessary and proper in light of the Defendants' violations and unwillingness to cooperate. Moreover, this relief falls within (and is less burdensome than) that requested in the Complaint [Doc. No. 1], where Plaintiffs sought this same information and documents but also sought Defendants' deposition.

    2.    Order Enjoining Defendants from Using Plaintiffs' Signatures, Stamps, and Licensing

Plaintiffs' Motion for Default Judgment [Doc. No. 11] also requests that the court "permanently enjoin[] [Defendants] from using, or causing to be used, the signatures, stamps,

---

[4] "Such identification shall include names of clients, properties, owners of properties, dates, fees and other charges levied, payment received, and document names (e.g., surveys, plans)." Mot. for Default J., Ex. B at 2 [Doc. No. 11-1].

and licensing credentials belonging to any other individual, specifically including but not limited to those of Plaintiffs Holdright and Lent and any other employee of Plaintiff Control Point." Id. at 3.

In light of the allegations and attestations put forth, the requested relief is appropriate as to the Plaintiffs. The court enjoins the Defendants from using, or causing to be used, the signatures, stamps, and licensing credentials belonging to Plaintiffs Holdright or Lent, or any employee of Plaintiff Control Point. The court does not extend the injunction as to "any other individual" as Plaintiffs' action is not brought on behalf of others. Id.

**IV.    Conclusion**

Accordingly, Plaintiffs' Motion for Default Judgment [Doc. No. 11] is GRANTED IN PART. The court will enter judgment in favor of Plaintiffs and against Defendants in $15,382.50 in trebled damages and an additional $29,255.82 for attorneys' fees and costs; Plaintiffs' request for sworn statements and materials from Defendants related to Defendants' violations under this order; and a narrowly tailored injunction against Defendants from using or causing to be used, the signatures, stamps, and licensing credentials belonging to Plaintiffs Holdright or Lent or any other employee of Plaintiff Control Point.

IT IS SO ORDERED.

April 20, 2022                                              /s/   Indira Talwani
                                                           United States District Judge